UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
In Re:

JAMES LINCOLN DUFFY

    Debtor.
------------------------------------------------------------------------x

JAMES LINCOLN DUFFY,

    Debtor/Appellee

    -against-

LAURA MAYER TABACK,

    Creditor/Appellant.

------------------------------------------------------------------------x

U.S.D.C. Case No. 06-0169 (CLB)

U.S.B.C. Case No. 04-23560 (ASH)

*Memorandum and Order*

U.S.B.C. Adv. Proc. No. 04-8855

Brieant, J.

    Appellant Laura Mayer Taback appeals a Judgment of the Bankruptcy Court (Adlai S. Hardin, B.J.) entered in favor of Appellee James Duffy ("Debtor") on September 29, 2005, in this Chapter 7 Adversary Proceeding.[1] The Judgment held that Duffy's debt designated as "spousal maintenance" was not truly in the nature of alimony or maintenance within the scope of Section 523(a)(5) of Title 11, and determined it rather to be a property settlement of the value of Debtor's medical degree acquired during the marriage; concluded that Debtor was unable to pay the remaining $74,000 debt on the obligation; and concluded finally that discharging the obligation would confer a benefit on Debtor that outweighed the detriment to Appellant Taback.

---

[1] The Bankruptcy Court decision is found as *Duffy v. Taback (In re Duffy)*, 331 B.R. 137 (Bankr. S.D.N.Y. 2005) (Hardin, B.J.).

1

*Background*

The parties were married in July 1984 and have two children, born in 1986 and 1989. During the course of the marriage, Duffy obtained his medical degree, although his studies began prior to the marriage. Taback is disabled to some degree by a long-term physical ailment known as horn cell disease, which has at times prevented her from working in her field of occupational therapy. Taback argues that she is totally disabled from working in contrast to Judge Hardin's finding that she is somewhat disabled and has "chosen" not to work. Between the years 1981 and 1997, Taback underwent several surgeries on her arms and hands, and she received her first Social Security Disability payment in October 1999. She submitted at the bankruptcy trial an affidavit by Dr. Mark Belsky, dated August 2005, which includes an assessment that despite her surgeries, Taback was 100% impaired from working since 1995" and that "Taback remains disabled and 100% impaired from working." *Exh. I - RR.*[2] Appellant argues that the Bankruptcy Court failed to consider this unrefuted testimony.

In 1994 Appellant Taback commenced an action for divorce. After several years, the divorce action finally came on for trial before the Honorable Fred Shapiro, Justice of the Supreme Court in the 9th Judicial District on June 27, 1997. On that date, with the participation of Justice Shapiro, the parties stipulated to a settlement of what the Bankruptcy Court found to be the single issue on which they went to trial, that of the equitable distribution of the value of the medical degree. Appellant adamantly disputes Judge Hardin's finding that the single issue at

---

[2] Appellant refers to this exhibit as "RR." Although it is not labeled as such in the copy of exhibits provided to the Court, the Court nevertheless refers to it as such.

2

the divorce proceeding was the equitable distribution of the medical license and practice, arguing that many other issues were also unsettled such as custody and child support.

The judgment of divorce states in relevant part:

ADJUDGED AND DECREED that the Defendant [Duffy] shall pay monthly spousal maintenance to the Plaintiff [Taback] commencing July 1, 1997 in the sum of $2,000 per month payable in monthly installments which shall be made on the first day of each month for the term of ten (10) consecutive years, which payment shall be non-dischargeable in bankruptcy and paid unconditionally to the Wife irrespective of her cohabitation or remarriage.

*Plaintiff's Exh. I-A at 3.*

For several years Debtor complied with the decree and made the monthly $2,000 payments, as well as child support payments of $2,000 per month, and extras like medical bills and extracurricular expenses. In May 2002, Duffy admitted to several professional misconduct allegations and relinquished his license to practice medicine. The Bankruptcy Court found that Debtor thereafter tried in good faith to obtain new employment to support himself and honor his financial obligations, but was unable to earn meaningful income and fell into arrears in his divorce judgment obligations. He sent Appellant several letters noting his lack of income, apologizing to her for his inability to pay alimony, and noting in each letter the cumulative sums of overdue payments. *See Pl.'s Exhs. I-D-K, M-O.*

In the Spring of 2004, Appellant Taback moved in the state court for sanctions to enforce her rights under the divorce judgment. On May 26, 2004, the state court, having found that a garnishment or wage reduction would be futile, ordered Duffy to pay the sum of $42,600 on or before 11:00 a.m. on June 1, 2004 on pain of incarceration. The sum combined the child support

3

and spousal maintenance due. Duffy's father provided him the money to be paid to Taback, but Duffy again fell into arrears, being unable again to comply with his $2000-plus monthly child support and $2000 "spousal maintenance" obligations under the divorce judgment.

On October 12, 2004, Duffy filed a voluntary petition under Chapter 7 of the Bankruptcy Code and in that same month commenced an adversary proceeding against his ex-wife, Appellee Laura Taback, seeking a determination of the dischargeability under Section 523(a)(5) and (15) of the Bankruptcy Code of a $74,000 debt remaining on the state court judgment of divorce, which required Debtor to pay a total of $240,000 in spousal maintenance over ten years of monthly payments of $2000. The adversary proceeding was tried without a jury. Following a bench trial, the Bankruptcy Court held, in relevant part:

> I conclude as a matter of fact and law that the provision in the divorce judgment for ten-year payments designated "spousal maintenance" aggregating $240,000 in point of fact constituted the settlement of a dispute between the parties concerning solely equitable distribution of the debtor's property interest in his medical license and practice. Since the dispute which was tried in the state court on June 27, 1997 concerned only equitable distribution, and since Taback made no claim for alimony/maintenance at or prior to the trial in the divorce action the liability to pay $240,000 over ten years although designated as "spousal maintenance" was not "actually in the nature of alimony, maintenance, or support" ... [and accordingly] cannot be deemed alimony, maintenance or support within the scope of Section 523(a)(5).
>
> ...
>
> I conclude as a matter of fact and law that Duffy did not have the ability to pay the arrears in his matrimonial obligations as they accrued either before or after the May 26, 2004 contempt hearing, and that Duffy does not have the ability to pay the $74,000 remaining unpaid on his $240,000 "spousal maintenance" obligation under the divorce judgment. I further conclude as a matter of fact and law under Section 523(a)(15)(B) that discharging the $74,000 spousal maintenance obligation would confer a benefit on Duffy that far outweighs any detriment to Taback. Accordingly, the $74,000 spousal maintenance obligation is discharged.

*Opinion at 20-21.*

Appellant states the following issues raised on this appeal:

I. Were the monies at issue improperly discharged by the Bankruptcy Court as a property settlement where they emanated from a professional license and are thus, as a matter of law, in the nature of support and non-dischargeable?

II. Under the Bankruptcy Code 11 U.S.C. §523(a)(5), was a debtor's obligation characterized as maintenance/alimony in the oral Stipulation of Settlement which was incorporated into a Divorce Judgment improperly re-characterized as a distributive award by the Bankruptcy Court and thus dischargeable, when (I) the debtor maintained throughout the matrimonial litigation that his medical license had no value; (ii) the parties in the Oral Stipulation confirmed their understanding that the monies were alimony/maintenance; (iii) the Judgment characterized the payments as alimony/maintenance; (iv) the parties' subsequent conduct and actions since the Judgment confirmed their intent that the monies were alimony/maintenance?

III. Whether the Bankruptcy Court made certain clearly erroneous statements of fact and/or omitted certain salient facts which affected its decision, and evidenced a bias against the non-debtor spouse?

IV. Under Bankruptcy Code 11 U.S.C. §523(a)(15), whether the Bankruptcy Court erred, as a matter of law, in discharging the re-characterized award?

V. By transforming the agreed-upon alimony into a property distribution, did the Bankruptcy Court improperly stand in the place and stead of the state's matrimonial court, and without any expert testimony, value debtor's medical license, distribute it, and discharge it, thus interfering improperly with and acting in the nature of a state appellate court, with respect to the state court proceedings?

*Appellant's Brief at 2.*[3]

A district court reviews the Bankruptcy Court's findings of fact under the "clearly erroneous" standard. *Federal Rules of Bankruptcy Procedure ("FRBP") Rule 8013.* It reviews conclusions of law de novo. *In re: Arochem Corp.,* 176 F.3d 610, 620 (2d Cir. 1999).

---

[3] These constitute a more elaborate but substantively consistent rendition of Appellant's statement of issues on appeal filed January 10, 2006.

5

In relevant part, Section 523(a)(5) of the Bankruptcy Code excepts from discharge any debt:

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that -
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise ... or
> (B) such debt includes a liability designated as alimony, maintenance, or support, *unless such liability is actually in the nature of alimony, maintenance, or support*.

11 U.S.C. §523(a)(5)(emphasis added). Our Court of Appeals has explained:

> In order for [a debt] to be nondischargeable under § 523(a)(5), three statutory requirements must be met. First, the debt must be "to a spouse, former spouse, or child of the debtor." 11 U.S.C. § 523 (a)(5). Second, the debt must be "actually in the nature of" (as opposed to simply designated as) alimony, maintenance, or support. Id. § 523(a)(5)(B). Third, the debt must have been incurred "in connection with a separation agreement, divorce decree or other order of a court of record." Id. § 523(a)(5).

*Falk & Siemer v. Maddigan (In re Maddigan),* 312 F.3d 589, 593 (2d Cir. 2002).

"We have held that the question whether a debt meets the statutory requirement for being in the nature of support is a factual determination of the bankruptcy court, and as such is subject to reversal only if clearly erroneous." *Id. at* 595 (2d Cir. 2002). "Whether a payment is alimony, maintenance or support within the meaning of section 523(a)(5) is a question of federal bankruptcy law, not of state law. Although the status of a payment under state law is relevant to this determination, it is not dispositive." *In re Brody*, 3 F.3d 35, 39 (2d Cir. 1993)(citations omitted). "Under bankruptcy law, the intent of the parties at the time a separation agreement is executed determines whether a payment pursuant to the agreement is alimony, support or

6

maintenance within the meaning of section 523(a)(5)." *Id. at* 38. "The parol evidence rule does not apply in cases such as the instant one, and factual inquiry under section 523(a)(5) is not limited to the four corners of a separation agreement or divorce decree." *Id. at* 38-39.

*I. Are monies emanating from the value of a professional license as a matter of law in the nature of support and therefore nondischargeable?*

Appellant argues that according to *Zaera v. Raff*, 93 B.R. 41 (Bankr. S.D.N.Y. 1988) (Schwartzberg, B.J), the monies at issue are, as a matter of law, in the nature of alimony and therefore not dischargeable under Section 523(a)(5) of the Bankruptcy Code. In *Raff,* the Bankruptcy Court relied on *O'Brien v. O'Brien,* 66 NY2d 576, 584 (1985), and held that an award of a percentage of the value of a medical degree was in the nature of alimony and support and was non-dischargeable. In *O'Brien,* the New York Court of Appeals held that "marital property encompasses a license to practice medicine to the extent that the license is acquired during marriage."

Judge Hardin noted that to the extent that *Zaera v. Raff*, which held that a distributive award of the value of debtor's medical degree acquired during marriage is in the nature of non-dischargeable alimony and not marital property, intended to establish a bright line rule to that effect, he declined to follow *Raff*.

This Court does not find an intended bright line rule in *Raff*, but were it so to find, would nevertheless not be bound thereby. As set forth *supra*, the law of the Second Circuit is that the intent of the parties, at the time a separation agreement or consent judgment is executed,

7

determines whether a payment pursuant to the agreement is alimony, support or maintenance within the meaning of section 523(a)(5). Although the state court holding of *O'Brien*, would lend support to a finding that the payments constituted alimony or support, it is not dispositive in a bankruptcy proceeding, because whether a payment is alimony, maintenance or support within the meaning of section 523(a)(5) is a question of federal bankruptcy law, not of state law. *See Brody, supra*. The Court accordingly rejects Appellant's argument that the payments were, as a matter of law, in the nature of alimony or support, and will address *infra*, whether Judge Hardin was clearly erroneous by finding in this case that the payments were *in fact* in the nature of alimony or support.

*II. Was it Clearly Erroneous for the Bankruptcy Court to Find that Debtor's Obligation was in Fact a Dischargeable Distributive Award rather than Non-dischargeable Alimony or Maintenance?*

The Bankruptcy Court found that on June 17, 1997, the parties settled their only actually remaining dispute pending before the state court, which was over the equitable distribution of Duffy's property interest in his medical degree, and they did not settle a claim over alimony or maintenance, as such a claim was never made. *Opinion at 10*. It found that the parties treated the distribution as spousal maintenance at the suggestion of Justice Shapiro in order to settle Taback's claim for equitable distribution in a way that Duffy's net cost would be reduced by way of federal income tax deductions.

Plaintiff argues that the Bankruptcy Court relied on erroneous facts to justify his decision. She specifically challenges Judge Hardin's finding that the only issue at trial was that of equitable distribution of the value of the medical license. She argues that in reality no issues

8

had been resolved prior to the trial, but particularly that issues of child support and visitation were unresolved, as evidenced by a concession of Senator Meyer, who said that his trial memorandum, submitted one day prior to the trial, addressed two outstanding issues - calculation of child support and the valuation of Duffy's medical license. *See Exh. J. At 9-10.*

The Preliminary Conference Order of the Supreme Court dated March 6, 1995, regarding the parties' divorce action states that it was:

> ORDERED, that the following issues remain unresolved:
> [handwritten] "VALUATION OF MEDICAL PRACTICE [-] Whether O'Brien applies
> [pre-printed] ORDERED, that any issues with respect to fault, custody and finance not specifically set forth above may not be subsequently raised in this absent good cause shown..."

The Bankruptcy Court found it relevant that three months later, on June 27, 1995, the parties requesting an October 1995 trial signed a stipulation agreeing that the only issue to be resolved was equitable distribution. This Court agrees.

As earlier set forth, under bankruptcy law, the contemporaneous intent of the parties determines whether a payment pursuant to the agreement is alimony, support or maintenance within the meaning of section 523(a)(5). *See Brody*, *supra*. Our Court of Appeals has also held:

> Although it is true that "what constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law," H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 364 (1977), reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 6320, it is also true that "Congress could not have intended that federal courts were to formulate the bankruptcy law of alimony and support in a vacuum, precluded from all reference to the reasoning of the well-established laws of the States." *Pauley v. Spong (In re Spong),* 661 F.2d 6, 9 (2d Cir. 1981). Thus, while the characterization of the award by the referee is not determinative of the question, it is strongly indicative [of whether it] was intended as, and constituted, alimony.

9

*Forsdick v. Turgeon*, 812 F.2d 801, 802-803 (2d Cir. 1987).

Appellant makes a cogent argument that the payments were consistently referred to as alimony and treated as such by both parties for tax purposes. Taback paid income taxes on the payments, and Duffy took deductions for the payments. There is no dispute or doubt that the payments were designated as "spousal maintenance." *See Forsdick, supra.* Despite the weight properly afforded the terms of the divorce decree, however, "the label that the parties attach to a payment is not dispositive; the court must look to the substance, and not merely the form, of the payments." *In re Brody*, 3 F.3d at 38 (citations omitted). Despite the tax consequences reflecting alimony in this case, the term making the payments unconditional despite Taback's remarriage or cohabitation flies in the face of an intent to award alimony support. The parties sought to have it both ways, and clearly settled on a sum with conditions that was expected to provide certain benefits to each of them. This leaves room for doubt as to the parties' intention, and the Bankruptcy Court was correct to look beyond the terms of the agreement to determine the parties' intent.

The Bankruptcy Court found that the testimony of Duffy and his then-attorney, now Senator Meyer[4] was unrebutted by any contrary evidence or testimony, was "entirely credible," and together with the documentary evidence established irrefutably that Taback and Duffy went to trial on June 27, 1997, on the single issue of the equitable distribution of the property interest in the medical practice, and that Taback never made a claim for alimony or maintenance. What

---

[4] Appellee's then-counsel Edward Meyer is now a State Senator in Connecticut.

they went to trial for is what was settled at trial with the aid of Justice Shapiro.

Appellant also relies on the transcript of the Stipulation, in which Justice Shapiro spoke of the great disagreements of which he was aware after personally speaking with them, which was overcome by the end result of the settlement. He stated:

> I will accept your consent to the terms of the agreement and the parties and counsel, I want to thank both of you because I think this was one case where there was a tremendous amount of compromise. That the differences between the parties seemed insurmountable at the beginning of the day and I am very pleased that the result reached was satisfactory to the parties and something that they can both live with and I thank counsel.

*Exh. I - B at 42.* Justice Shapiro's reference to the disparity between the parties is not necessarily determinative that there was more than one major disputed economic issue, and does not render clearly erroneous Judge Hardin's finding regarding the payments, and his conclusion that the medical degree distribution was the only issue remaining at the time of the settlement.

Appellant argues that the intent of the parties was for Duffy to provide support and that this is evidenced by the fact that Duffy and his attorney maintained the position throughout the divorce proceedings that his medical license had no value and that Duffy only claims its value now for self-serving purposes. She argues that Duffy could not have intended to distribute an asset, which he and his attorney believed had no value.

Duffy's earlier "self-serving" posture at any stage in the proceedings is not now dispositive of the issue of whether the payments were actually in the nature of alimony support or of an equitable distribution of what Appellant has always contended had value. Taking a self-

11

serving posture in an adversarial proceeding is ordinary, and an earlier position that the license did not have value did not necessarily make it so. Appellant submitted an expert report suggesting that the value of the degree was approximately $828,000, and a settlement ultimately ensued. *See Exh. G*. Appellant's posture that the degree had no value does not render clearly erroneous the Bankruptcy Court's finding that the settlement constituted an equitable distribution of the value of the degree rather than alimony.

In this case, the Bankruptcy judge properly considered the state law pertaining to the distribution of the value of a professional license. He looked beyond the four corners of the divorce decree, and noted that no claim for alimony or maintenance was ever made by Taback. He noted the fact that Appellant sought the divorce and that she remarried her current spouse shortly after the divorce went through. He noted that Justice Shapiro encouraged the parties to settle the dispute over the value of the medical degree, and that although Justice Shapiro testified during the bankruptcy trial that he had no independent recollection of what happened at the trial in 1997, he "testified unequivocally" that the March 6, 1995 Preliminary Conference Order and the June 27, 1995 Stipulation limited the issues to be resolved and "would preclude the taking of evidence on the issue of alimony/maintenance." *Opinion at 8*. Judge Hardin also considered the fact the Appellant sought the divorce and she married her current spouse shortly after the divorce went through.

There is support in the record for the Bankruptcy Court's decision. The Court finds it particularly significant that the Judgment itself provides that the payments shall be "paid

serving posture in an adversarial proceeding is ordinary, and an earlier position that the license did not have value did not necessarily make it so. Appellant submitted an expert report suggesting that the value of the degree was approximately $828,000, and a settlement ultimately ensued. *See Exh. G*. Appellant's posture that the degree had no value does not render clearly erroneous the Bankruptcy Court's finding that the settlement constituted an equitable distribution of the value of the degree rather than alimony.

In this case, the Bankruptcy judge properly considered the state law pertaining to the distribution of the value of a professional license. He looked beyond the four corners of the divorce decree, and noted that no claim for alimony or maintenance was ever made by Taback. He noted the fact that Appellant sought the divorce and that she remarried her current spouse shortly after the divorce went through. He noted that Justice Shapiro encouraged the parties to settle the dispute over the value of the medical degree, and that although Justice Shapiro testified during the bankruptcy trial that he had no independent recollection of what happened at the trial in 1997, he "testified unequivocally" that the March 6, 1995 Preliminary Conference Order and the June 27, 1995 Stipulation limited the issues to be resolved and "would preclude the taking of evidence on the issue of alimony/maintenance." *Opinion at 8*. Judge Hardin also considered the fact the Appellant sought the divorce and she married her current spouse shortly after the divorce went through.

There is support in the record for the Bankruptcy Court's decision. The Court finds it particularly significant that the Judgment itself provides that the payments shall be "paid

unconditionally to the Wife irrespective of her cohabitation or remarriage." *See Pl.'s Exh. I-A at 3.* Such a condition is wholly uncharacteristic of an alimony or maintenance obligation, the purpose of which is to provide support for one not otherwise supported. This fact alone casts substantial doubt as to whether the parties' intention was to provide traditional alimony support.

Despite the designations to the contrary and coextensive tax consequences, considering the totality of the facts and circumstances, this Court concludes that the Bankruptcy Court was not clearly erroneous in finding that the payments designated as "spousal maintenance" were "not actually in the nature of alimony, maintenance or support" and will consider *infra* whether the remaining payment balance was properly discharged under bankruptcy law.

*III. Did the Bankruptcy Court Err by Discharging the Debt under Section 523(a)(15)?*

Appellant challenges the Bankruptcy Court's factual and legal conclusion that Duffy did not have the ability to pay the arrears in his obligations accruing before and after the May 26, 2004 contempt hearing, that he does not now have the ability to pay the $74,000 remaining unpaid on the $240,000 total obligation under the divorce judgment, and that a discharge of the $74,000 obligation would confer a benefit on Duffy that far outweighs the detriment to Taback. She also challenges the Bankruptcy Court's finding that despite the horn cell disease, she is able, but has chosen not to work.

Appellant argues that the Bankruptcy Court ignored the facts such as that Appellee chose to surrender his medical license rather than to retain counsel to defend the case against him or to

pursue other options; that when Appellee had access to funds from his father, he inappropriately used them for bankruptcy proceedings rather than for payment of his support obligations; and that Appellee has paid his attorneys more than the $74,000, which is the amount of the debt discharged. Appellant also argues that the Bankruptcy Court erred by failing to require and consider evidence regarding Appellee's live-in fiancee's finances, which, she argues are relevant to the dischargeability issue.

In relevant part, Section 523(a)(15) of the Bankruptcy Code excepts from discharge any debt:

> (15) not the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless -
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation , preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. §523(a)(15). Accordingly, the obligation in dispute, which was incurred in the course of a divorce was not properly discharged unless Duffy doesn't have the ability to pay or if the benefit of discharge to Duffy outweighs the detriment to Taback.

Appellee argues that Appellant failed to raise in her Statement of Issues on Appeal

subparagraph (A) of 11 U.S.C. §523(a)(15), which omission could serve to preclude her from challenging dischargeability under that subsection now. Because this Court affirms on the basis of subparagraph (B), it need not decide the waiver argument.

*Section 523(a)(15)(B)*

Appellant argues that the debt is not dischargeable under subsection B, considering her disability, her modest family income and Appellee's use of the litigation and costs to modify his support obligations. This Court does not find clear error in the Bankruptcy Court's balancing of the respective benefits and detriments, which would inure to the parties upon discharge of the debt, and finding that the benefit to Duffy outweighed the detriment to Taback. The Bankruptcy Court noted that Duffy had child support obligations of more than $2,000/month, and an income of only approximately $2,400/month. The Bankruptcy Court noted that despite Duffy's payment over the years of most of the total debt of $240,000, he was ordered to prison once for his inability to pay, and recommended for prison a second time. It noted in contrast, Taback's 2004 household adjusted gross income of $159,000, her high-end vehicle, her individual ownership of her own house with equity exceeding $110,000, her personal savings account, and ability to take ski vacations with her family for the last six years.

The Bankruptcy Court did not commit clear error by finding that the benefit of discharge to Duffy outweighed the detriment to Taback.

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed.

X

X

X

X

X

X

X

X

SO ORDERED.

Dated: White Plains, New York  
      June 5, 2006                                                                                                                             _____  
                                                                                                                                             Charles L. Brieant, U.S.D.J.

SO ORDERED.

Dated: White Plains, New York
      June 5, 2006

                                                                         Charles L. Brieant, U.S.D.J.